UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPELTON PARKER, JR. by his legal guardian
JULIETTE PARKER,

      Plaintiffs,

v.

CITY OF HIGHLAND PARK, *et al.*,

      Defendants.

Case No. 18-cv-12038
Hon. Matthew F. Leitman

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND TO STRIKE EXHIBITS ATTACHED TO THE COMPLAINT (ECF No. 39.)

In this action, Plaintiff Opelton Parker, Jr. alleges that Defendants the City of Highland Park and four of its police officers violated his Fourth Amendment rights and his rights under Title II of the Americans with Disabilities Act (the "ADA") when the officers detained him at a music festival and repeatedly struck and tased him. (*See* Frist Am. Compl., ECF No. 37.)   Highland Park and its officers deny Parker's claims and have moved to dismiss them under Federal Rule of Civil Procedure 12(b)(6). (*See* Mot., ECF No. 28).

The motion comes to the Court in an unusual posture.  Significant discovery, including depositions all of the officer Defendants, has already taken place.  Yet, for the purposes of Defendants' motion to dismiss, the Court must accept all well-pleaded allegations in the First Amended Complaint as true – including Parker's

repeated allegations that he was not resisting at the time the officers struck and tased him.  For the reasons that follow, the Court concludes that while Parker has pleaded cognizable excessive force claims against the named officers, his other claims are not viable.  Defendants' motion to dismiss is therefore **GRANTED IN PART AND DENIED IN PART** as set forth below.

# I

The facts Parker alleges are as follows.  Parker is a "developmentally disabled adult due to Autism Spectrum Disorder [] manifested by communication and social processing deficits." (First Am. Compl. at ¶7, ECF No. 37, PageID.323.)  On July 18, 2015, Parker "was attending the Jazz Festival in Highland Park, Michigan." (*Id.* at ¶11, PageID.324.)  While Parker was at the festival, the Highland Park police received a "report of a disturbance involving [the] alleged destroying of tables at the event." (*Id.*)  Defendant police officers Randy Perry and Frank George thereafter arrived at the festival to investigate that complaint. (*See id.*)

Shortly after the officers' arrival, they "observed Parker seated on the ground posing no threat to officer safety or others." (*Id.* at ¶15, PageID.324.)  At that time, "there was no identified complainant nor did officers witness any crime for which a warrantless arrest could be made." (*Id.*, at ¶14, PageID.324.)  In addition, no information had been conveyed to officers Perry and George "that Parker was armed or [was] posing an immediate threat to [him]self or others." (*Id.* at ¶12, PageID.324.)

Officers Perry and George "addressed" Parker, and Parker "arose from [his] seated position." (*Id.* at ¶15, PageID.325.)  The officers then "ordered Parker to be handcuffed." (*Id.* at ¶16, PageID.325.)  "[A]lthough Parker offered no active resistance to [the officers'] verbal orders, both officers Perry and George directed unreasonable force against Parker [by] forcefully tackling him to the ground" and subjecting him to several "knee strikes." (*Id.* at ¶17, PageID.325.)

Defendant officers Josh Fryckland and Michael Ochs then arrived on the scene. (*See id.* at ¶18, PageID.325.)  Upon arrival, officers Fryckland and Ochs "knew that Parker was unarmed" and were aware that Parker had not "placed" any officer "in any immediate threat." (*Id.* at ¶¶ 19-22, PageID.325-326.)  Nonetheless, officers Fryckland and Ochs used a taser on Parker five times. (*See id.* at ¶¶ 23-24, PageID.326.)  "At no time did any officer announce 'Taser' prior to deployment or inform Parker of the reason for directing force at any time." (*Id.* at ¶26, PageID.326.)

Parker says that "at all time[s]," the Defendant officers "had actual knowledge of [his] developmental disability based upon *inter alia*, obvious nonverbal deficit, incoherent speech and lack of eye contact." (*Id.* at ¶29, PageID.327.)  He further claims that as a result of the officers' misconduct, he "suffered loss of liberty, indignity, and injuries including: electrical shock, contusion, swelling to the eyes, face and body all of which resulted in pain and suffering, shock, humiliation, fright, mental/emotional injury and medical expense[s]." (*Id.* at ¶34, PageID.328.)

## II

On June 28, 2018, Parker filed this action against officers Perry, George, Ochs, Fryckland, and Highland Park. (*See* Compl., ECF No. 1.) The Defendants moved to dismiss the Complaint on October 31, 2019. (*See* ECF No. 31.) Defendants argued, among other things, that Parker had "not set forth well-pled facts showing a constitutional violation." (*Id.*, PageID.163.) Defendants further asserted that Parker "failed to establish a violation of the American with Disabilities Act." (*Id.*) Finally, Defendants maintained that the Defendant officers were entitled to qualified immunity. (*See id.*) Parker responded and insisted that his "allegations provide factually plausible claims providing fair notice to defendants" of his claims. (ECF No. 32, PageID.195.)

The Court thereafter held an on-the-record telephonic status conference and entered an order granting Parker leave to file a First Amended Complaint. (*See* Order, ECF No. 36.) During the status conference, and in the Court's written order granting Parker leave to amend, the Court explained that "this [was Parker's] opportunity to add any factual allegations that are response to the deficiencies identified in Defendants' motion." (*Id.*, PageID.320.) The Court also told Parker that it "would not be inclined to allow [him] to amend the Complaint later to add factual allegations that [he] could add now." (*Id.*)

Parker filed his First Amended Complaint on March 11, 2019. (*See* First Am. Compl., ECF No. 37.) Prior to filing the First Amended Complaint, Parker took the deposition of Defendants Fryckland, Ochs, Perry, and George. Parker referenced certain testimony from those depositions in his First Amended Complaint, and he attached excerpts from the depositions to that pleading. (*See id.*)

Parker's First Amended Complaint includes two counts. In Count I, Parker alleges that the Defendant officers violated (1) his Fourth Amendment rights and (2) his rights under Title II of the ADA when they unlawfully detained him and "unlawfully used unreasonable and excessive force" against him. (*Id.* at ¶¶ 38, 43, PageID.329-330.) In Count II, Parker alleges that the Highland Park failed to properly train its officers with respect to the use of tasers and the officers' interactions with people with mental disabilities. (*See id.* at ¶¶ 48-67, PageID.331-336.) Parker insists that Highland Park is therefore liable for his injuries under the United States Supreme Court's decision of *Monnell v. Dep't of Soc. Scvs. of the City of New York*, 436 U.S. 658 (1978). (*See id.*)

Defendants moved to dismiss all of Parker's claims on March 16, 2019. (*See* Mot. to Dismiss, ECF No. 39.) Defendants also moved to strike the deposition excerpts that Parker attached to his First Amended Complaint. (*See id.*) The Court held a hearing on the motion on November 6, 2019.

# III

Defendants move to dismiss the claims brought against them pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id*. When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

# IV

The Court first turns to the Defendant officers' assertion that they are entitled to dismissal of Parker's constitutional claims based upon qualified immunity.

## A

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Green v. Throckmorton*, 681 F.3d 853, 864 (6th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Once raised, it is the plaintiff's burden to show that the defendant[] [is] not entitled to qualified immunity." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

"To survive [a] motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 898 (6th Cir. 2019). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Id.* at 899. In addition, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually

summary judgment and not dismissal under Rule 12." *Id.* Indeed, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Id.* (quoting *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017).

**B**

The Court begins with Parker's claim that officers Perry and George "ordered Parker to be handcuffed under circumstances that did not objectively warrant that precaution thereby resulting in an unreasonable seizure … under *Terry v. Ohio*, 392 U.S. 1 (1968)." (First Am. Compl. at ¶16, ECF No. 37, PageID.325; *see also id.* at ¶37, PageID.328.) Officers Perry and George are entitled to dismissal of this "*Terry*" claim for two reasons. (*Id.*)

First, Parker has abandoned this claim. Officers Perry and George specifically moved to dismiss Parker's unlawful seizure claim (*see* Mot. to Dismiss, ECF No. 39, PageID.394-395), but Parker did not address the claim at all in his response brief. When Parker described his allegations in Count I of his First Amended Complaint, he identified *only* his excessive force claim; he never referenced an unreasonable seizure claim:

> In particular, Count I alleges claims against individual officers Perry, George, Ochs and Fryckland under the Fourth Amendment for *inter alia*, excessive force through unnecessary knee strikes and multiple taser deployment of Parker, a developmentally disabled person, absent resistance and fully compliant at all times.

(Resp. to Mot. to Dismiss, ECF No. 40, PageID.424.) Because Parker did not address this claim in his response to Defendants' motion, the Court considers the claim abandoned. *See, e.g.*, *Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) ("The district court correctly noted [] that [the plaintiff] abandoned [certain] claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint. Accordingly, we need not consider those claims"). *Cf. Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment").

Second, even if Parker had not abandoned this claim, officers Perry and George would still be entitled to qualified immunity because Parker has failed to plausibly allege that officers Perry and George violated his constitutional rights under *Terry* when they stopped him at the festival. "The question is whether, at the moment that [the officers stopped and detained Parker], the totality of the circumstances provided the officers with the reasonable suspicion required in order to detain a citizen under *Terry*." *Feathers v. Aey*, 319 F.3d 843, 848-49 (6th Cir. 2003).

In the First Amended Complaint, Parker does not plead *facts* suggesting that officers Perry and George lacked reasonable suspicion to believe that he was responsible for the malicious destruction of property at the festival. Nor does Parker

plead that he did not actually destroy property. Instead, Parker pleads that "at no time was any information conveyed to [officers Perry and George] that Parker was *armed or posing an immediate threat to [him]self or others.*" (First Am. Compl. at ¶¶ 12, ECF No. 37, PageID.324; emphasis added.) But whether Parker was "armed or pose[d] an immediate threat" speaks the level of force the officers were entitled to use in detaining him, not to whether the officers lacked reasonable suspicion that Parker destroyed the property. Parker also alleges that "[a]t the time of Officer Perry and George's arrival there was no identified *complainant*." (*Id.* at ¶13, PageID.324; emphasis added.) But Parker cites no authority for the proposition that the lack of a specifically-identified complainant, standing alone, is sufficient to establish a lack of reasonable suspicion. And Parker does not plead that the other circumstances existing when officers Perry and George arrived were insufficient to establish reasonable suspicion. Simply put, Parker's allegations say essentially nothing about whether reasonable suspicion did or did not exist when officers Perry and George arrived, and for that reason he has failed to carry his burden of pleading facts that, if proven, would establish the alleged *Terry* violation.

Accordingly, the Court will dismiss Parker's *Terry* claim against officers Perry and George. Dismissal based upon the above-identified pleading deficiencies is appropriate given that the Court previously instructed Parker to include in his First Amended Complaint specific factual allegations to support his claims.

## C

The Court next addresses Parker's claim that officers Perry and George subjected him to excessive force when they both "forcefully tackl[ed] him to the ground" and "direct[ed] unreasonable knee strikes" at his body. (First Am. Compl. at ¶17, ECF No. 37, PageID.235.) The Court concludes that neither officer is entitled to qualified immunity with respect to this claim at this time.

"In determining whether an excessive force constitutional violation occurred, [courts] must look at the objective reasonableness of the defendant's conduct." *Grawey v. Drury*, 567 F.3d 302, 310 (6th Cir. 2009). "Among the most important factors to consider in determining the objective reasonableness of the force used are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Based on the well-pleaded allegations in the First Amended Complaint, these factors support the conclusion that Parker has stated a viable excessive force claim against officers Perry and George. The alleged crime that officers Perry and George suspected Parker of committing is the malicious destruction of property (the destruction of tables at the festival Parker attended). While that crime is serious, it is not a violent crime, and Parker was not in the process of committing that crime

when officers Perry and George tackled him and subjected him to several knee strikes. Second, Parker pleads in the First Amended Complaint that he was not "posing [an] immediate threat to officer safety or others at anytime." (First Am. Compl. at ¶14, ECF No. 37, PageID.324.) Finally, Parker alleges that he "offered no active resistance to [the] verbal orders" of officers Perry and George. (*See id.* at ¶17, PageID.325.) Under these alleged circumstances, it would have been unreasonable for officers Perry and George to tackle Parker and inflict knee strikes upon him.

Next, Parker's right to be free from tackling and knee strikes under the circumstances alleged here was clearly established. "[T]his circuit has [] concluded that, since at least 2009, the use of violence against a subdued and non-resisting individual has been clearly established as excessive force." *Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015). *See also Kijowski v. City of Niles*, 372 F. Appp'x 595, 601 (6th Cir. 2010) ("[T]he right to be free from physical force when one is not resisting the police is a clearly established right"). And Parker alleges that at the time officers Perry and George used force against him, he was "offer[ing] no active resistance" to the officers' orders. (First. Am. Compl., ECF No. 37, PageID.325.) Parker has therefore plausibly alleged that officers Perry and George violated his clearly-established constitutional right to be free from excessive force.

Officers Perry and George counter that Parker *was* "actively resisting arrest" and was "struggl[ing] with the officers" at the time they tackled and struck him. (Def.s' Reply Br., ECF No. 41, PageID.558-589.) They also say that he "refused to be handcuffed" and needed to be "subdue[d]." (Mot. to Dismiss, ECF No. 39, PageID.396.) The officers therefore insist that they had the right to use force against Parker. (*See id.*) But nowhere in the First Amended Complaint does Parker plead that he was actively resisting arrest and struggling with the officers. Indeed, he pleads just the opposite: that he was not actively resisting the officers' commands. Thus, while officers Perry's and George's argument may be one that could conceivably carry the day on summary judgment – when the Court reviews the full factual record – at the motion to dismiss stage, it cannot accept the officers' representations about Parker's purported aggressiveness which are at odds with the allegations in the pleadings. Officers Perry and George are therefore not entitled to dismissal of Parker's excessive force claim and not entitled to qualified immunity at this time.

**D**

The Court now turns to Parker's claim that officers Fryckland and Ochs subjected him to excessive force when officer Fryckland "taze[d] Parker several times" and officer Ochs "taze[d] Parker multiple times in the right arm and back."

(First Am. Compl., ECF No. 37, PageID.326.)  The Court concludes that neither officer is entitled to qualified immunity with respect to this claim at this time.

In the Sixth Circuit, "the reasonableness of an officer's use of a taser turns on active resistance: When a suspect actively resists arrest, the police can use a taser [] to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Kent v. Oakland County*, 810 F.3d 384, 392 (6th Cir. 2016).  Moreover, even if a suspect "refused to comply with commands," if that suspect "never demonstrated physical violence" and was not resisting "when tased[, that suspect] had a right to be free from the use of a taser." *Id.* at 397.

Here, Parker sufficiently alleges that officers Fryckland and Ochs subjected him to excessive force when they tased him.  Paker specifically alleges that he "offered no active resistance" to the order that he be handcuffed, and he also pleads that when officers Fryckland and Ochs tased him, there was no "objective threat to officer safety." (First Am. Compl. at ¶¶ 17, 23-24, ECF No. 37, PageID.326.)  He further pleads that he "neither resisted, obstructed, or posed any immediate threat to officer safety at any time." (*Id.* at ¶28, PageID.325-326.)  Therefore, because Parker has plausibly alleged that he was not actively resisting and not demonstrating physical violence at the time he was tased, he plausibly alleges that officers Fryckland and Ochs subjected him to excessive force.

Parker's constitutional right to be free from the tasing under the facts he alleges in the First Amended Complaint was also clearly established. "It is clearly established in this Circuit that the use of a Taser on a non-resistant suspect constitutes excessive force." *Kent*, 810 F.3d at 396 (internal quotation marks omitted). *See also Brown v. Weber*, 555 F. App'x 550, 554-55 (6th Cir. 2014) (holding that tasing a suspect who "posed little to no immediate threat to the safety of the officers or others" and who "was unarmed, not making verbal threats, and sitting … in the fetal position" violated the suspect's clearly-established constitutional rights); *Kijowski*, 372 F. App'x at 601 (reversing district court's grant of summary judgment on the issue of qualified immunity and holding that defendant officer "could not reasonably have believed that the use of a Taser on a non-resistant suspect was lawful").

Like officers Perry and George, officers Fryckland and Ochs insist that their use of a taser on Parker was justified because Parker was "struggle[ing] with the officers," "refused to be handcuffed," and "actively/resisted/fought with five police officers." (Mot. to Dismiss, ECF No. 397, PageID.396-397.) But the problem for officers Fryckland and Ochs is that their version of events is nowhere to be found in Parker's First Amended Complaint. And it is that pleading, and Parker's plausible allegations within it that he was not resisting or posing a threat to the officers at the time he was tased, that controls at the motion to dismiss stage of these proceedings.

Officers Fryckland and Ochs can attempt to persuade the Court that the evidence in the record supports their tasing of Parker on summary judgment. But at this time, they are not entitled to qualified immunity with respect to Parker's excessive force claim.

**V**

The Court next turns to Parker's claim that the officers and Highland Park violated his rights under Title II of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Parker insists that the officer Defendants and Highland Park violated this provision when the officers detained, tackled, struck, and tasered him. (*See* First Am. Compl. at ¶32, ECF No. 37, PageID.327.) The Court concludes that all Defendants are entitled to dismissal of this claim.

The Court begins with Parker's claim that the individual officers violated the ADA. The officers argue that this claim fails because Title II of the ADA provides for the imposition of liability upon public entities but not upon individuals employed by those entities. (*See* Mot. to Dismiss, ECF No. 39, PageID.400.) They rely upon the Supreme Court's decision in *City and County of San Francisco, Calf. v. Sheehan*, 135 S.Ct. 1765 (2015). In *Sheehan*, the Supreme Court said that "[o]nly public

entities are subject to Title II [of the ADA]." *Id.* at 1773. Parker makes no real counter-argument. Instead, he says only the Sixth Circuit has "reviewed the application of Title II claims in the context of police arrests on several occasions." (Resp. to Mot. to Dismiss, ECF No. 40, PageID.439.) But those cases do not squarely hold that a plaintiff can bring a claim under Title II of the ADA against an individual defendant. And Parker has not identified any case in which a court in this Circuit has confronted this question and squarely held that a plaintiff could proceed on an ADA claim against an individual defendant. Therefore, Parker may not maintain his claim under the ADA against the officer Defendants and those claims are dismissed.

Even if Title II of the ADA did allow for the imposition of liability upon individual employees of public entities, Parker's ADA claim against the officers would still fail. To state a claim under Title II of the ADA, a plaintiff must allege, among other things, "a casual relationship between his disability and Defendants' alleged discriminatory conduct." *Daniels v. Leslie*, 2018 WL 3216240, at *4 (E.D. Mich. July 2, 2018). Stated another way, a plaintiff must plead, and ultimately establish, that "the defendant took action *because of* the plaintiff's disability, *i.e.*, the plaintiff must [plead and] present evidence that *animus* against the protected group was a *significant factor* [in the defendant's conduct]." *Id.* (emphasis in original).

Parker has failed to plead *any* facts that could tend to establish that the Defendant officers used force against him him *because* of his disability or that his disability was a *significant factor* in the officers' decision to use force. Parker pleads only that the Defendant officers were *aware* of his condition, not that his condition motivated the officers' conduct towards him. (*See* First Am. Compl. at ¶29, ECF No. 37, PageID.327.) That is not enough to state a claim under Title II of the ADA. *See Daniels*, *supra*.

The Sixth Circuit reached a similar conclusion in *Smith v. City of Troy, Ohio*, 874 F.3d 938 (6th Cir. 2017). In *Smith*, a plaintiff who suffered from epilepsy was tackled to the ground and tased by police officers while he was having a seizure. He brought numerous claims against the officers and the city employing them including a Fourth Amendment excessive force claim and a claim under Title II of the ADA. The Sixth Circuit concluded that while the plaintiff could proceed on his excessive force claim, he could not on his ADA claim:

> Smith also claims that the defendants denied him access to police services because of his disability, in violation of Title II of the ADA. In order to establish a Title II violation, the plaintiff must show that the defendants intentionally discriminated against him *because of* his disability. In this case, even granting that the officers used excessive force against Smith, he has not shown that they intentionally discriminated against him because of his disability. Accordingly, we find that the district court correctly granted summary judgment to the defendants on Smith's ADA claim.

*Id.* at 947 (emphasis in original; internal citation omitted). The same reasoning applies here. Parker has not pleaded that the officers used excessive force against him "because of" his disability, his ADA claim against the officers therefore fails.

Finally, Parker's failure to plead that the officers – or anyone else employed by the Highland Park – acted against him because of his disability is likewise fatal to his ADA claim against Highland Park. While Highland Park may be the proper defendant for Parker's ADA claim, it is not liable under the facts alleged by Parker – which do not include any assertion that Highland Park employee acted against him because of his disability. The Court therefore dismisses all of Parker's claims under the ADA.

## VI

The Court next turns to Parker's claim that the Highland Park is liable "pursuant to *Monell*, based upon policies, customs, and practices including, *inter alia*, [the] failure to train, failure to accommodate disabled persons and discrimination under the Americans with Disabilities Act." (Resp. to Mot. to Dismiss, ECF No. 40, PageID.424.) The Court concludes that dismissal of this claim is warranted.

"A municipality cannot be held liable under § 1983 simply because one of its employees violated the plaintiff's constitutional rights. In other words, § 1983 does not impose *respondeat superior* liability on municipalities. In order to impose §

1983 liability on a municipality, the plaintiff must prove that the constitutional deprivation occurred as a result of an official custom or policy of the municipality." *Smith*, 874 F.3d at 946 (internal citations omitted). "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Here, Parker attempts to show an illegal policy or custom through allegations of inadequate training. He claims that Highland Park failed to train its officers how to use tasers and interact with members of the community who have mental illnesses and/or disabilities. (Resp. to Mot. to Dismiss, ECF No. 40, PageID.433.) In order to sufficiently plead this failure to train theory, Parker needed to allege that Highland Park "ignored a history of abuse and [was] clearly on notice that [its] training [in the deployment of tasers and the proper use of force] was deficient and likely to cause injury." *Smith*, 874 F.3d at 946-47. *See also Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 573 (6th Cir. 2016) (internal punctuation omitted) ("To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the [City] has ignored a history of abuse and was clearly

on notice that the training in this particular area was deficient and likely to cause injury.").

Highland Park is entitled to dismissal of Parker's municipal liability claim because Parker has failed to plead facts that could establish that the allegedly inadequate training resulted from Highland Park's deliberate indifference. For example, Parker has not pleaded that there were any prior instances of unconstitutional conduct that may have put Highland Park on notice of a problem with its training. Nor has Parker pleaded facts that could establish a pattern of similar constitutional violations by untrained employees. Simply put, Parker has not alleged any facts that would have put Highland Park on notice that its training was inadequate. Thus, Parker has not pleaded a cognizable failure-to-train municipal liability claim against Highland Park.

Parker counters that he has pleaded sufficient facts to state a claim against Highland Park. He highlights his allegation that Highland Park police officers have "'daily' … encounters with disabled citizens suffering [from] 'mental disability or other mental illness.'" (*See* Resp. to Mot. to Dismiss, ECF No. 40, PageID 433; quoting First Am. Compl. at ¶60, ECF No. 37, PageID.333-334"). And he insists that since Highland Park knew that its officers have regular contact with the mentally disabled, it had to recognize the need for special training in dealing with those individuals.

But Parker's allegation that Highland Park officers had regular contact with the mentally disabled actually makes Parker's claim *less* plausible, not more so. Indeed, the fact that officers in Highland Park frequently interact with the mentally disabled and that Parker has not been able to identify any other incident in which an officer has violated the constitutional rights of a person with a mental illness suggests that there is no need for additional training. It tends to indicate that the current training of Highland Park officers is sufficient to permit them to have regular contact with the mentally disabled without incident – and without risk of a constitutional violation.

For all of these reasons, Parker has not alleged sufficient facts to maintain his municipal liability claim against Highland Park. The Court therefore will dismiss that claim.

## VII

Finally, Defendants moved to strike the excerpts from the Defendant officers' depositions that Parker attached to his First Amended Complaint. The Court did not rely on those attachments when makings its ruling in this Opinion and Order. The Court therefore will **DENY** Defendants' motion to strike the attached exhibits.

## VIII

For all of the reasons stated above, Defendants' motion to dismiss (ECF No. 39) is **GRANTED IN PART AN DENIED IN PART AS FOLLOWS:**

- The motion is **GRANTED** with respect to Parker's ADA and municipal liability claims. Those claims are **DISMISSED**.

- The motion is **DENIED** with respect to Parker's excessive force constitutional claims against the Defendant officers. Those claims may proceed.

   **IT IS SO ORDERED**.

                                          s/Matthew F. Leitman
                                          MATTHEW F. LEITMAN
Dated:  January 31, 2020                  UNITED STATES DISTRICT JUDGE


   I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 31, 2020, by electronic means and/or ordinary mail.

                                          s/ Holly A. Monda
                                          Case Manager
                                          (810) 341-9764